1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

9   Jay David Ramsey, Sr.,

10              Petitioner,

11   vs.

12   Charles Ryan, et al.,

13              Respondent.

14

No. CV 11-0101-TUC-FRZ (HCE)

**REPORT AND**
**RECOMMENDATION**

15          On February 14, 2011, Petitioner, Jay David Ramsey, Sr., an inmate confined in

16   the Arizona State Prison in Buckeye, Arizona, filed a *pro se* Petition for Writ of Habeas

17   Corpus by a Person in State Custody, pursuant to Title 28, U.S.C. § 2254, with

18   attachments 1 through 21 attached. (Doc. 1.) In a March 1, 2011 Order, the Court granted

19   Petitioner *in forma pauperis* status and dismissed the petition with leave to amend. On

20   March 25, 2011, Petitioner filed an Amended Petition ("Petition".) (Doc. 5.) Respondents

21   have filed an answer to the Petition ("Answer") with exhibits A through X attached.

22   (Docs. 10-15.) Petitioner filed a reply ("Reply") on July 14, 2011, (doc. 18) and

23   subsequently obtained permission from the court to expand the record with additional

24   exhibits (Docs. 23-32).

25

26          Pursuant to the Rules of Practice of this Court, this matter was referred to

27

28

Magistrate Judge Hector C. Estrada for a Report and Recommendation. (Doc. 6.)

For the reasons discussed below, the Magistrate Judge recommends that the District Court enter an order DISMISSING the Petition.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Trial Court Proceedings

On March 11, 2003, an indictment was returned by the grand jurors of Pima County in Arizona Superior Court, charging Petitioner with one count of continuous sexual abuse of a child, a class two felony. (Answer, Ex. R.)

Following a hearing, the trial court granted Petitioner's motion to proceed *pro se* and appointed advisory counsel. (Answer, Ex. T.) Prior to trial, the state moved *in limine* to preclude any mention of the Petitioner's previous jury trial or the verdicts in Pima County Superior Court Cause No. CR-200113448. (Answer, Ex. S.) At a hearing on November 12, 2003, Petitioner indicated that he would file a response to the State's motion no later than November 19, 2003. (Answer, Ex. U.) No response was filed. At a pretrial motions hearing on January 5, 2004, Petitioner waived his right to represent himself, and the Court appointed counsel to represent him at trial. At the same hearing, the trial court ruled that Petitioner's previous trials be referred to as prior hearings and that no mention was to be made of prior verdicts. (Answer, Exs. V, W.)

The Arizona Court of Appeals summarized the procedural background of the state court proceeding in its opinion affirming Petitioner's convictions:

> After a jury trial, appellant Jay David Ramsey, Sr. was convicted of continuous sexual abuse of a child in violation of A.R.S. § 13-1417. He was

- 2 -

sentenced to a presumptive, twenty-year prison term pursuant to A.R.S. § 13-604.01(C).

*State v. Ramsey*, 211 Ariz. 529, 531, ¶ 1 (App. 2005)(Answer, Ex. A.)

      B.  Appeal

The state appellate court affirmed Petitioner's conviction and sentence on direct appeal. (Answer, Ex. A.) The appellate court addressed Petitioner's arguments, rejecting Petitioner's contentions that: (1) A.R.S. § 13-1417 is unconstitutionally duplicitous; (2) A.R.S. § 13-1417 violates Arizona Constitution, Article 2, Section 23, by not requiring a unanimous jury verdict on three or more predicate violations of A.R.S. §§ 13-1405, 1406, and 1410; (3) the trial court erred by giving a constitutionally defective jury instruction on the definition of A.R.S. § 13-1417 and the unanimity requirement; (4) Petitioner was denied a fair trial because the court admitted highly prejudicial evidence that was not relevant or admissible under Rule 404(b) or Rule 404(c); (5) Petitioner was denied a fair trial because of the bias of the judge; (6) the trial court erred by denying Petitioner's Rule 20 motion for judgment of acquittal; and (7) the trial court violated Petitioner's constitutional right to a jury trial and to defend himself and Petitioner's sentencing was in violation of the holding in *Blakely v. Washington*.[1] (Answer, Ex. M, at 8.)

Petitioner filed a petition for review to the Arizona Supreme Court on February 13, 2006, and on June 27, 2006, that court denied review. (Answer, Ex. B.)

      C.  Petition for Post-Conviction Relief

Petitioner's notice of post-conviction relief was filed on June 17, 2004. (Answer,

[1] 542 U.S. 296 (2004).

Ex. C.) The notice was immediately stayed because of Petitioner's pending appeal, and, on August 24, 2006, the notice was reinstated. (*See* Answer, Ex. D.) On October 30, 2007, the Court denied Petitioner's fifth motion for an extension for time and dismissed the notice. (Answer, Ex. E.) Following a hearing on Petitioner's motion to reconsider the court's dismissal of the notice, the notice was reinstated (Answer, Ex. F); Petitioner, proceeding *pro se* with advisory counsel, filed a petition on April 4, 2008, and an amendment to the petition on October 23, 2008. (*See* Answer, Exs. G, H.) Petitioner presented the following issues in his petition: (1) the state's expert witness Wendy Dutton misled the jury about her academic credentials and experience; and (2) the trial court erred by ruling to suppress the victim's prior false allegations resulting in a denial of Petitioner's constitutional right to confront the victim. (Answer, Ex. G.) Petitioner also argued ineffective assistance of trial counsel for failing to raise these issues at trial. (*See id.*)

The trial court dismissed the petition for post-conviction relief on January 9, 2009. (Answer, Ex. D.) The trial court found the first claim regarding expert Wendy Dutton precluded under Arizona Rule of Criminal Procedure 32.2(a)(1) because Petitioner failed to raise it in his direct appeal. (Answer, Ex. D at 2-3.) The trial court also found that Petitioner's counsel was not ineffective for failing to raise this claim at trial.

The trial court found Petitioner's second claim precluded because Petitioner failed to raise it on appeal. The trial court considered Petitioner's argument that advisory counsel removed the argument from his appellate brief, and found that, even if Petitioner

had raised the argument, the evidence was properly admitted at trial, and therefore Petitioner suffered no prejudice as a result. (*Id.*, at 4-5.) The trial court found that Petitioner's counsel was not ineffective for failing to object to this evidence at trial because it was a reasonable tactical decision in light of the evidence. (*Id.*, at 5.) The trial court further found that counsel's failure to impeach the victim with evidence of prior dismissed or acquitted counts was pursuant to the court's ruling and therefore did not fall below objectively reasonable standards. (*Id.*, at 5.)

In his petition for review to the court of appeals, Petitioner argued that trial counsel was ineffective for (1) failing to object to the court's preclusion of acquittal and dismissal evidence; and (2) failing to introduce relevant rebuttal evidence at trial against the state's "other bad acts" as to sexual conduct with a minor and sexual abuse allegations, in violation of the 6th and 14th Amendments of the U.S. Constitution. (Answer, Ex. I, at 2.)

On December 2, 2009, in a memorandum decision, the Arizona Court of Appeals granted review, and denied relief. (Answer, Ex. J.) The appellate court stated that the trial court correctly identified and ruled on the relevant legal issues, and adopted the trial court's ruling. (Answer, Ex. J, at 3.)

On April 30, 2010, Petitioner filed a petition for review to the Arizona Supreme Court raising the same issues brought before the appellate court. (Answer, Ex. K, at 2.) The Arizona Supreme Court denied review by order dated September 7, 2010. (Answer, Ex. L.)

D. Federal Habeas Petition

On March 25, 2011, Petitioner filed the instant amended petition raising five grounds in support of his request for habeas relief (1) Petitioner's Fifth and Fourteenth Amendment rights were violated by prosecutorial misconduct during his trial; (2) Petitioner was indicted, tried, and convicted in violation of the Fifth and Fourteenth Amendments' protection against double jeopardy; (3) The trial judge was vindictive and biased, in violation of Petitioner's Fifth, Sixth, and Fourteenth Amendment due process rights; (4) Petitioner's Fifth and Fourteenth Amendment rights were violated by an "indictment that [was] duplicitous"; and (5) Petitioner was denied effective assistance of counsel, in violation of the Sixth and Fourteenth Amendments. (Petition)

II.   **DISCUSSION**

A. Standard of Review

Because Petitioner filed his petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d) ("AEDPA").

B. Statute of Limitations

Under the AEDPA, a state prisoner must generally file a petition for writ of habeas corpus within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review [.]" 28 U.S.C. § 2244(d)(1)(A). "The time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim

is pending shall not be counted toward any period of limitation[.]" 28 U.S.C. § 2244(d)(2).

The running of this one-year statute of limitations on habeas petitions for state convictions is tolled during any period when "a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" in any state court. *See* 28 U.S.C. § 2244(d)(2). Thus, the statute of limitations is tolled during the pendency of a state court action for post-conviction relief. 28 U.S.C. § 2244(d)(2).

An application contemplated by section 2244(d)(2) is properly filed "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (footnote omitted). The United States Supreme Court has held that untimely state post-conviction petitions are not "properly filed" under AEDPA, and do not toll AEDPA's statute of limitations. *Pace v. DiGuglielmo*, 544 U.S. 408 (2005).

C.  Exhaustion of State Remedies

Before a federal court may review a petitioner's claims on the merits, a petitioner must exhaust his state remedies, which means he must have presented in state court every claim raised in his federal habeas petition. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (a state prisoner in a federal habeas action must

exhaust his federal claims in the state courts "by invoking one complete round of the State's established appellate review process" before he may submit those claims in a federal habeas petition). Exhaustion occurs either when a claim has been fairly presented to the highest state court, *Picard v. Connor*, 404 U.S. 270, 275 (1971), or by establishing that a claim has been procedurally defaulted and that no state remedies remain available, *Reed v. Ross*, 468 U.S. 1, 11 (1984). Exhaustion of state remedies is required in order to give the state the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted).

"To exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32," *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994), and then present his claims to the Arizona Court of Appeals. *See Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999).

To meet the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court by describing the factual or legal bases for that claim and by alerting the state court "to the fact that the ... [petitioner is] asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 364, 365-366 (1995); *Baldwin*, 541 U.S. at 29; *see also Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001). Mere similarity between a claim raised in state court and a claim in a federal habeas petition is insufficient. *Duncan*, 513 U.S. at 365-366. A petitioner must present both the operative

facts and the federal legal theory on which the claim is based, *see Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003) (overruled on other grounds, *Robbins v. Carey*, 481 F.3d 1143 1149 (9th Cir. 2007)). "[B]road constitutional principles, such as due process, equal protection, and the right to a fair trial" in state court pleadings are not sufficient to establish that a federal constitutional claim was fairly presented to the state courts. *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005)(internal citations omitted). A petitioner must make the federal basis of a claim explicit either by citing specific provisions of federal law or case, *Lyons v. Crawford,* 232 F.3d 666, 670 (9th Cir. 2000) as amended by 247 F.3d 904 (9th Cir. 2001), or by citing state cases that plainly analyze the federal constitutional claim, *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (*en banc*).

### 1.   *Procedural Default*

A habeas petitioner's claims may be precluded from federal review in either of two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). This situation is referred to as "procedural bar" or "procedural default." *See Coleman*, 501 U.S. at 732 ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."). A claim is procedurally defaulted if the state court declined to address the issue on the merits for procedural reasons such as waiver or preclusion. *Ylst v. Nunnemaker*, 501 U.S.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

797, 802-805 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002). Second, the claim may be procedurally defaulted in federal court if the petitioner failed to present the claim in a necessary state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman,* 501 U.S. at 735 n.1; *Smith v. Baldwin*, 510 F.3d 1127, 1138 (9th Cir. 2007) (*en banc*) This is often referred to as "technical" exhaustion, because although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy.

### 2. *Cause and Prejudice/ Fundamental Miscarriage*

If a claim is procedurally defaulted, it may not be considered by a federal court unless the petitioner demonstrates cause and prejudice to excuse the default in state court, or demonstrates that a fundamental miscarriage of justice would result. *Coleman,* 501 U.S. at 750; *Sawyer v. Whitley*, 505 U.S. 333, 338-339 (1992).

Cause is defined as a "legitimate excuse for the default," and prejudice is defined as "actual harm resulting from the alleged constitutional violation." *Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991); *see Murray v. Carrier*, 477 U.S. 478, 488 (1986) (a showing of cause requires a petitioner to show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule"). Prejudice need not be addressed if a petitioner fails to show cause. *Thomas*, 945 F.2d at 1123 n.10. To bring himself within the narrow class of cases that implicate a fundamental miscarriage of justice, a petitioner "must come forward with sufficient proof of his actual

innocence" *Sistrunk v. Armenakis*, 292 F.3d 669, 672-73 (9th Cir. 2002) (internal quotation marks and citations omitted), which can be shown when "a petitioner 'presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 673 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

D. Standard of Review: Merits

Petitioner's habeas claims are governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA established a "substantially higher threshold for habeas relief" with the "acknowledged purpose of 'reduc[ing] delays in the execution of state and federal criminal sentences.'" *Schriro v. Landrigan*, 550 U.S. 465, 475 (2007) (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)). The AEDPA's "'highly deferential standard for evaluating state-court rulings' ... demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*) (quoting *Lindh*, 521 U.S. at 333 n. 7).

Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The phrase "adjudicated on the merits" refers to a decision resolving a party's claim which is based on the substance of the claim rather than on a procedural or other non-substantive ground. *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004). The relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst,* 501 U.S. at 803-04); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

"The threshold question under AEDPA [is] whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003), *overruled on other grounds by Lockyer v. Andrade*, 538 U.S. 63 (2003). Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner, even if lower federal courts have decided the issue. *Williams*, 529 U.S. at 381; *see Musladin*, 549 U.S. at 76-77; *Casey v. Moore*, 386 F.3d 896, 907 (9th Cir. 2004). Nevertheless, while only Supreme Court authority is binding, circuit court precedent may be "persuasive" in determining what law is clearly

established and whether a state court applied that law unreasonably. *Clark*, 331 F.3d at 1069.

### III.   ANALYSIS

#### A. Timeliness

Petitioner had until one year after his conviction and sentence became final to file his federal petition. Respondents concede (Doc. 10, at 4) and the Magistrate Judge finds that, pursuant to the AEDPA, the Petition filed in this Court is timely.

#### B. Ground One

Petitioner asserts in Ground One of the Petition that his Fifth and Fourteenth Amendment rights were violated by prosecutorial misconduct during his trial. (Petition, at 6.) Respondents argue that this claim is not exhausted, and, furthermore, the claim is rendered moot by his conviction. (Doc. 10, at 5-6)

##### 1.   *Procedural Default*

##### a)   **Exhaustion**

Petitioner acknowledges that he did not raise Ground One to the Arizona Court of Appeals, explaining he was prevented from doing so "because of deliberate interference of a state official that Ramsey could not have reasonably for[e]seen." (Petition, at 6.) "Ramsey's [a]dvisory [c]ounsel appointed to assist him intentionally altered Ramsey's [d]irect [a]ppeal, without permission, without Ramsey's prior knowledge, and against specific written instructions given by Ramsey. By the time Ramsey learned of this, it was too late to correct." (Petition, at 6.)

1

### b)      *Availability of state procedures*

Petitioner did not properly present the federal claim raised in Ground One to the state courts and any attempt to return to state court to present that claim would be futile because it would be procedurally barred pursuant to Arizona law. First, Petitioner is time-barred under Arizona law from raising these claims in a successive petition for post-conviction relief because the time for filing a notice of post-conviction relief has long expired. *See* Ariz.R.Crim.P. 32.1 and 32.4 (a petition for post-conviction relief must be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is later.") Although Rule 32.4 does not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P 32.1(d) through (h), Petitioner has not asserted that any of these exceptions apply to him. Moreover, a state post-conviction action is futile where it is time-barred. *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002); *Moreno v. Gonzalez*, 116 F.3d 409, 410 (9th Cir. 1997) (recognizing untimeliness under Ariz. R.Crim. P. 32.4(a) as a basis for dismissal of an Arizona petition for post-conviction relief, distinct from preclusion under Rule 32.2(a)).

Furthermore, under Rule 32.2(a) of the Arizona Rules of Criminal Procedure, a defendant is precluded from raising claims that could have been raised on direct appeal or in any previous collateral proceeding. *See Krone v. Hotham*, 181 Ariz. 364, 366, 890 P.2d 1149, 1151 (1995) (capital defendant's early petition for post-conviction relief raised limited number of issues and waived other issues that he could have then raised, but did

not); *State v. Curtis*, 185 Ariz. 112,113, 912 P.2d 1341, 1342 (App.1995) ("Defendants are precluded from seeking post-conviction relief on grounds that were adjudicated, or could have been raised and adjudicated, in a prior appeal or prior petition for post-conviction relief."); *State v. Berryman*, 178 Ariz. 617, 624 (App.1994) (defendant's claim that his sentence had been improperly enhanced by prior conviction was precluded by defendant's failure to raise issue on appeal). Petitioner's unexhausted claim could have, and should have, been properly raised either on direct appeal or on post-conviction review. Accordingly, the State court would find those procedurally barred.

### c)      Cause

Petitioner explains in his Reply that he delivered a handwritten draft of his appeal to advisory counsel that included three appellate issues that were deleted when advisory counsel typed and submitted Ramsey's opening brief to the appellate court. (Reply, at 44.) Petitioner alleges that advisory counsel signed the final typewritten appeal on his behalf, and that he was not made aware of the deletion of those three issues until he received a copy of the appeal that advisory counsel sent along with a copy of the state's response to the opening brief. (Reply, at 44.) Ramsey's exhibits support his allegation that advisory counsel deleted the issue from his opening brief and signed the brief on his behalf. (*Compare* Doc 32-9, Ex. 78, Appellant's Opening Brief: Issue VIII, at 73-77 (draft) *with* Answer, Ex. M, Appellant's Opening Brief (final); *see also* Answer, Ex. M, at 40 (signature page).) The opening brief, however, contains a certification by advisory counsel that a copy of the opening brief was mailed to Petitioner on the date of filing,

February 1, 2005. (*See* Answer, Ex. M, at 42 (certificate of filing and service).)

Petitioner argues that the removal of the issues from his appellate brief amounted to deliberate interference by advisory counsel, a "court appointed state official," (Reply, at 45), and establishes cause for his failure to exhaust this issue in the state courts. Even if Petitioner's allegations are true, however, he has failed to establish cause.

Cause may be established by demonstrating interference by state officials that made compliance with the state procedural rule impracticable. *Coleman*, 501 U.S. at 753. The external impediment, whether it be government interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from constructing or raising the claim. *See Murray*, 477 U.S. at 492.

Petitioner alleges that he gave "explicit written instructions" to advisory counsel to "type the direct appeal to include a total of nine (9) appeal issues, and, have the final 'typed' appeal returned to Ramsey." (Reply, at 44.) The letter, dated January 25, 2005, addressed to advisory counsel, instructs counsel not to "edit anything out." (doc. 32-10, Ex. 79, at 1.) Petitioner further instructed advisory counsel that they were "working on a tight time line" and instructed counsel to have her investigator bring the brief back to Petitioner for signature and Petitioner would submit it along with a written motion to exceed word count. (*Id.*, Ex. 79, at 1-2.)

First, even if advisory counsel deleted the issues from his opening brief, Petitioner has not demonstrated that compliance with the state's procedural rules was impracticable, or that anything external to Petitioner's defense prevented Petitioner from presenting

Ground One to the Arizona Court of Appeals. *See Smith,* 510 F.3d at 1146 (To establish cause for a procedural default, "petitioner must demonstrate that the default is due to an external objective factor that cannot fairly be attributed to him.")(internal quotation marks omitted). Petitioner should have been aware that advisory counsel was not acting in accordance with his instructions prior to Petitioner's receipt of a copy of the opening brief. Even assuming Petitioner had no further communication with advisory counsel, because Petitioner knew that he had instructed advisory counsel to hand-deliver the typed brief to Petitioner prior to the date the opening brief was due, Petitioner should have realized his instructions had not been followed when counsel's investigator failed to present Petitioner personally with a typed brief prior to the filing deadline. This is true regardless of when Petitioner ultimately received a copy of the brief. Accordingly, realizing his instructions had not been followed, Petitioner could have filed a handwritten brief without the assistance of his advisory counsel, or he could have moved to continue the deadline for filing his opening brief in order to allow time for him to review, sign and file the typed brief. According to Petitioner's allegations, he had no reason to believe his brief had been filed by the due date, or at best, to suspect that it might have been filed without his signature and thus had been submitted without his review or authorization. *Clemmons v. Delo*, 124 F.3d 944 (8th Cir. 1997)(petitioner's motion to state supreme court for leave to file supplemental brief pro se to include claim omitted by counsel fairly presented claim to state court and was not procedurally defaulted).

Petitioner in this case did nothing to alert the Court of Appeals as to the substance

of the claims he wished them to hear. Petitioner's failure to take any corrective action at any time, either on the date the opening brief was due, which would have been the latest possible date Petitioner would have been first aware his instructions had not been followed, or at any time throughout the course of Petitioner's direct review proceedings, demonstrates acquiescence in advisory counsel's actions. Petitioner's allegations at this late stage are insufficient to demonstrate cause in light of failure to alert the appellate court to his claim. Where the petitioner had access to the information necessary to state the claim, the failure to develop and present the claim will not constitute cause. *See Murray*, 477 U.S. at 486; *see also Mize v. Hall*, 532 F.3d 1184 (11th Cir. 2008)("no causal link" between counsel's alleged ineffectiveness for not raising the prosecutorial misconduct claim in the extraordinary motion for new trial proceeding and the default of that claim; petitioner's failure to raise the claim in the third habeas proceeding severed the nexus between the alleged ineffectiveness of counsel and the default imposed by the state court in the fourth habeas proceeding); *Interiano v. Dormire*, 471 F.3d 854, 857 (8th Cir. 2006)(although counsel may have been ineffective for not raising claim on direct appeal, petitioner defaulted his claim by not raising it on direct appeal and state collateral review and the latter default could not be excused because petitioner had no constitutional right to counsel in the collateral proceeding); *Dellinger v. Bowen*, 301 F.3d 758, 766-67, n.10 (7th Cir. 2002)(petitioner failed to establish cause for the default of claim that appellate counsel was ineffective for not raising claim that trial counsel was ineffective; petitioner failed to raise ineffectiveness claim of either trial or appellate

counsel in state habeas proceedings and he had no constitutional right to counsel in the state habeas proceedings). Despite a record replete with evidence of Petitioner's ability to raise issues to all levels of the state courts, no motion to continue, amend, or supplement the opening brief was made prior to the appellate court's ruling on November 30, 2005. Thereafter, Petitioner failed to raise a vindictive prosecution claim during his post-conviction relief proceedings.[2] (*see* Answer, Exs. G, H, and I.)

Finally, to the extent Petitioner's attempt to establish cause rises above the level of mere attorney error or inadvertence to an independent constitutional claim, it is unexhausted. Petitioner has acknowledged he represented himself during the appellate proceedings and is thus barred from bringing an ineffective assistance of counsel claim as cause for the default. *See Faretta v. California*, 422 U.S. 806, 835 n.46. Similarly, because there is no constitutional right to have advisory counsel appointed, Petitioner also is barred from bringing an ineffective assistance of advisory counsel claim as cause for the default. *Coleman*, 501 U.S. at 753. Though Petitioner does not frame the issue in this manner, his claim is perhaps more appropriately characterized as a denial of his constitutional right to represent himself as established by *Faretta*, 422 U.S. 806 (1975). Because Petitioner's right to represent himself is a freestanding constitutional claim, "the

---

[2] Petitioner did raise another claim that had been deleted from his appeal, and argue as cause for failure to raise that ground on appeal that his advisory counsel had removed the issue from his opening brief, demonstrating his ability to raise such a claim before the state courts during post-conviction proceedings. (Answer, Ex. G, at 29-31) The trial court considered the claim, accepted the premise as true for purposes of determining cause for preclusion of that claim, and denied the claim because Petitioner had suffered no prejudice. (Answer, Ex. D) Nothing prevented Petitioner from raising his vindictive prosecution claim in the same manner.

- 19 -

principles of comity and federalism that underlie our longstanding exhaustion doctrine ... require *that* constitutional claim, like others, to be first raised in state court." *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000) (*emphasis in original*).[3] Petitioner had the opportunity, but did not raise any constitutional claim in his collateral proceedings that he was denied the right to represent himself. (*See* Answer, Ex. G, I.) Consequently, Petitioner has failed to establish cause for his procedural default of Ground One. Because Petitioner has failed to establish cause, the Court need not consider prejudice. *See Thomas,* 945 F.2d at 1123 n. 10.

### d)    *Actual Innocence*

Petitioner argues that he is permitted to raise the issue of intentional prosecutorial misconduct by vindictive prosecution pursuant to the doctrine of "actual innocence." (Reply, at 47.) To support a claim of actual innocence a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup,* 513 U.S. at 324. The Court concludes that upon review of Petitioner's allegations, including the allegations asserted in Petitioner's reply, that Petitioner has not offered any new reliable evidence of actual innocence sufficient to

---

[3] The Supreme Court has recognized a narrow exception to this well established law, however, this case is distinguishable. *See Martinez v. Ryan*, 132 S.Ct. 1309, 1315 (2012) (distinguishing counsel error in initial-review proceedings, precluding review by any court, from counsel's errors in other kinds of postconviction proceedings: "While counsel's errors in these proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding.")

1   establish that it is more likely than not that no reasonable juror would have found him

2   guilty beyond a reasonable doubt in light of the new evidence. *See id*. at 327.

### e) *Absent or deficient state corrective process*

Lastly, Petitioner submits that, pursuant to 28 U.S.C. 2254(b)(1)(B)(ii), this Court should address Petitioner's claim because circumstances exist that render the state's corrective process ineffective to protect the rights of the applicant. (Reply, at 41-42.) In certain limited circumstances, habeas petitions may be considered by the federal court, even if the petitioner did not exhaust the claims by fairly presenting them in state court. Excuse from exhaustion is available when either "(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B).

Petitioner's allegations, that the Court of Appeals adopted the trial court's ruling on prosecutorial vindictiveness, and "no argument Ramsey could have presented on this issue would have been considered since the Arizona Court of Appeals independently adopted [the trial court's] ruling as the "law of the case" (Reply, at 42.) are both factually incorrect and legally insufficient to excuse his failure to exhaust. Factually, contrary to Petitioner's assertions, the vindictive prosecution issue was not presented in any form to the trial court in Petitioner's Rule 32 proceedings, was not relied upon by the trial court as a predicate to any of the trial court's ruling, and was not implicit in the trial court's rulings. (*See* Answer, Ex. D.) Legally, the futility doctrine as an excuse for not presenting a claim to the state court has met with disfavor in the Supreme Court and in the Ninth

Circuit. *See Engle v. Isaac*, 456 U.S. 107, 130 (1982); *Noltie v. Peterson*, 9 F.3d 802, 805 (9th Cir. 1993). To the extent the futility doctrine survives in this circuit after *Engle* and *Noltie*, Petitioner has failed to demonstrate that "the highest state court has recently addressed the issue raised in the petition and resolved it adversely to the petitioner," *see Sweet*, 640 F.2d at 236, or that "there is no opportunity to obtain redress in state court or [that] … the corrective process is so clearly deficient as to render futile any effort to obtain relief," *see Duckworth v. Serrano*, 454 U.S. 1, 3 (1981). The appellate process exists for the purpose of reviewing and correcting the properly preserved objections to the rulings of the trial court. Had Petitioner's claim been raised in a procedurally appropriate mechanism for the appellate court to review the issue, no "law of the case" doctrine would have prevented the appellate court from correcting trial court error on this issue. "[A petitioner] may not bypass the state courts simply because he thinks they will be unsympathetic to the claim. Even a state court that has previously rejected a constitutional argument may decide, upon further reflection, that the contention is valid." *Engle*, 456 U.S. at 130. Accordingly, Petitioner has failed to establish an absence of available State corrective process or that circumstances exist that render such process ineffective to protect his rights.

Because Petitioner has failed to establish cause and prejudice for default of Ground One, or that failure to consider Ground One will result in a fundamental miscarriage of justice, or that there is an absent or a deficient state corrective process, the Magistrate Judge recommends dismissal of this claim.

C. <u>Ground Two</u>

In Ground Two, Petitioner contends that he was indicted, tried, and convicted in violation of the protection against "Double Jeopardy provided by the 5th and 14th Amendment of the U.S. Constitution as set forth in the Doctrines of Collateral Estoppel and Res Judicata." (Petition, at 7.) Respondents assert that Petitioner's claims in Ground Two have not been exhausted. (Doc. 10, at 6-7)

1. *Procedural Default*

### a) **Exhaustion and availability of state procedures**

Petitioner acknowledges that the issue was not presented to the Arizona Court of Appeals "because of deliberate interference by a State official, Ramsey's court appointed Advisory Counsel deleated [sic] this issue from Ramsey's direct appeal, against explicit written instructions, because she adamantly disagreed with this issue." (Petition, at 7.)

Petitioner did not properly present the federal claim raised in Ground Two to the state courts and any attempt to return to state court to present that claim would be futile because it would be procedurally barred pursuant to Arizona law. *See supra,* at III.B.1.ii. Petitioner's claim that he was indicted, tried, and convicted in violation of the Fifth and Fourteenth Amendments' protection against double jeopardy could have, and should have, been properly raised either on direct appeal or on post-conviction review. Accordingly, the State court would find this claim procedurally barred.

### b)    Cause

Petitioner alleges as cause for the failure to exhaust, a similar argument as the argument for cause he presented in Ground One. (*See* Doc. 18-1, at 95.) The specific allegations of Petitioner's claim regarding Ground Two, however, cause this Court to question the veracity of Petitioner's claim. In Petitioner's Reply he argues for the first time throughout all of his post-conviction proceedings, that, rather than including all issues in his draft opening brief, along with explicit instructions to advisory counsel in the letter he provided to her (*See* Original Petition, Doc. 1, at 6-41, ¶ 138; Answer, Ex. G., at 30), that he gave the "runner" that advisory counsel sent to pick up the opening brief, a separate segment presenting his double jeopardy argument, along with verbal instructions that advisory counsel was to eliminate issue four from the draft brief, and put the double jeopardy argument in its place. (Reply, at 97-98.) This is not the first contortion that Petitioner's cause argument has taken. Petitioner first alleged, in the Original Petition in this Court (Doc. 1), before he submitted the letter with "explicit instructions" to advisory counsel as an attachment to his Reply, that he had identified in that letter to advisory counsel "primary" and "secondary" issues; primary issues were required to be presented in the brief (Petitioner identified double jeopardy as one such identifiable issue), and secondary issues could be included if room permitted. (*See* Doc. 1, at 6-41, ¶ 138.) Now that Petitioner has attached a copy of this letter to his Reply, however, there is no mention of primary or secondary issues, or of any double jeopardy claim in the letter. (*See* Doc. 32-10, Ex. 79.) Furthermore, the number of issues Petitioner

alleges he attempted to raise in his opening brief, along with the number of issues advisory counsel has allegedly deleted, has also been refashioned by Petitioner over time: Original Petition – eleven issues, two deletions (Doc. 1, at 6-40 to 6-41); Reply – nine issues, three deletions (Reply, at 98.) Accordingly, the Court does not find credible evidence to support Petitioner's claim of cause.

Furthermore, for all the reasons stated in Section B.1.c., *supra*, of this Report and Recommendation, the Court finds that Petitioner has failed to demonstrate a legitimate claim of cause and to the extent Petitioner's attempt to establish cause rises above the level of mere attorney error or inadvertence to an independent constitutional claim, it is unexhausted. Petitioner has failed to establish cause and the Court need not consider prejudice. *See Thomas,* 945 F.2d at 1123 n. 10.

### c)    Actual Innocence

Petitioner again asserts that he is permitted to raise Ground Two pursuant to the doctrine of "actual innocence." (Reply, at 47.) To support a claim of actual innocence a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup,* 513 U.S. at 324. The Court concludes that upon review of Petitioner's allegations, including the allegations asserted in Petitioner's Reply, that Petitioner has not offered any new reliable evidence of actual innocence, sufficient to establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of the new

evidence. *See id*. at 327.

### d)    Absent or deficient state corrective process

Petitioner argues that he is permitted to raise this issue, pursuant to 28 U.S.C. § (b)(1)(B)(ii), because circumstances exist that render the state corrective process ineffective to protect the rights of Petitioner in this case. Petitioner asserts in his reply that the "Arizona Court of Appeals fully considered this claim on the overall material facts of the case and decided this issue on the merits in Ramsey's direct appeal and decided this issue against Ramsey." (Doc. 18-1, at 91.) Petitioner further asserts that the controlling authority established by Ramsey's case, as applied to Ramsey and others, has "effectively nullified the double jeopardy protection set forth in *Blockburger v. United States*." Thus, Petitioner argues, "the Arizona Court of Appeals fully considered the double jeopardy argument on the full merits of Ramsey's case presenting this claim would not have resulted in a different decision," rendering the state's corrective process ineffective to protect the rights of Petitioner. (Doc. 18-1, at 92.) Petitioner's arguments as to Ground Two, similar to his arguments in Ground One, are again both factually incorrect and legally insufficient.

Petitioner's double jeopardy claim, as asserted in Ground Two of this Petition, was not presented to the state courts. Petitioner's conviction and sentence for continuous sexual abuse of a child, in violation of A.R.S. § 13-1417, which is the subject of this federal habeas, (Answer, Ex. R.) was obtained after Petitioner's third trial in state court. Petitioner's first trial resulted in a mistrial, and the second trial resulted in the court

granting Petitioner's Rule 20 motion for judgment of acquittal on Count One; a jury verdict of not-guilty on Two (sexual abuse of a minor under 15); a blank verdict form on Counts Three and Four (sexual conduct with a minor under fifteen) and a jury verdict of guilty on Counts Five and Six (furnishing obscene or harmful items to minors). (Answer, Ex. O, at 86, Ex. P., at 2-3.) Petitioner did not argue to the state appellate court, as he does here (*see* Petition, at 7-7 to 7-14), that Petitioner's indictment and trial caused a double jeopardy violation because of the jury's blank verdict forms in his second trial as to Counts Three and Four, the trial court's subsequent declaration of mistrial as to these counts, and the prosecutor's decision to re-indict Petitioner for a violation of A.R.S. § 13-1417. (*See* Answer, Ex. M.) Rather Petitioner raised the issue that the indictment was duplicitous "in stating multiple offenses in one count" presenting "strictly a legal question, challenging the constitutionality of the continuous child abuse statute." (Answer, Ex. M, at 9-10.) Unlike Petitioner's argument in Ground Two of this habeas petition, Petitioner argued before the state appellate court that the indictment would *prospectively* offer no double jeopardy protection. (*See* Answer, Ex. M, at 12)

To the extent the futility doctrine remains viable (*see supra*, at Section III.B.1.iv), Petitioner has shown neither futility as to this issue, by demonstrating either that "the highest state court has recently addressed the issue raised in the petition and resolved it adversely to the petitioner," *see Sweet v. Cupp*, 640 F.2d 233, 236 (9th Cir. 1981), nor that "there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief," *see Duckworth,* 454 U.S. at

3. Accordingly, Petitioner has failed to establish an absence of available State corrective process or that circumstances exist that render such process ineffective to protect his rights.

Because Petitioner has failed to establish cause and prejudice for default of Ground Two, or that failure to consider Ground Two will result in a fundamental miscarriage of justice, or that there is an absence or a deficient state corrective process, the Magistrate Judge recommends dismissal of this claim.

### D.   Ground Three

Petitioner contends in Ground Three that the trial judge was vindictive and biased, in violation of Petitioner's Fifth, Sixth, and Fourteenth Amendment due process rights. (Petition, at 8.) Respondents consider the nine separate incidents of vindictiveness alleged by Petitioner, and argue that he failed to properly exhaust all of them. (Doc. 10, at 7-10)

#### 1.   *Procedural Default*

##### a)   **Exhaustion**

Petitioner asserts that he raised the judicial vindictiveness and bias claim in the state courts by asking for a recusal and change of trial judge based on judicial bias, and addressing this motion for recusal and change of judge for cause in his direct appeal. (Reply, at 114-115.) Although Petitioner may have addressed the motion for recusal and change of judge, he did not fairly present his nine claims of judicial bias to the Arizona

appellate court for review. To fairly present a federal claim, a petitioner must describe both the operative facts and the federal legal theory of his claim. *Baldwin*, 541 U.S. at 28. It is not enough that all of the facts necessary to support the federal claim were before the state court or that a "somewhat similar" state law claim was raised. *Baldwin*, 541 U.S. at 28 (stating that a reference to ineffective assistance of counsel does not alert the court to federal nature of the claim). Rather, the habeas petitioner must cite in state court to the specific constitutional guarantee upon which he bases his claim in federal court. *Tamalini,* 249 F.3d at 898.

Respondents urge this Court to find that Petitioner failed to exhaust all nine of the claims of judicial bias he raises in his Petition. (Answer, at 10.) Upon review of Petitioner's petition for post-conviction relief (Answer, Ex. G), the amendment to that petition (Answer, Ex. H), the trial court's denial of the petition (Answer, Ex. D), the petition for review to the court of appeals (Answer, Ex. I), and Petitioner's opening brief on direct review to the appellate court (Answer, Ex. M), the Magistrate Judge finds that all but one of the claims, the "sixth incident of judicial bias" is unexhausted. In Petitioner's sixth claim of judicial bias in the present Petition, Petitioner alleges the trial judge advised that, after sitting through two separate trials, she believed Ramsey had sexually abused A.R., and that this admission of her belief in Petitioner's guilt is the motivating cause of "her intentional over-reaching and extra judicial acts done to ensure Ramsey 'get's [sic] what he deserves", and, 'part of the reason for her animosity and unprofessional animosity toward's [sic] Ramsey contesting his case so hard, and, why she

granted the prosecutor such great favors." (Petition, at 8-10.) Petitioner had asserted in his direct appeal that the trial judge's reference to the alleged victim ("A." or "A.R.") as a victim during a bench conference on February 5, 2004, "clearly establishes that the trial judge had formed a predisposition or opinion that [Petitioner] was guilty of a criminal act, regardless of its nature, sometime prior to or during Petitioner's trial." (Answer, Ex. M, at 32-33.) Petitioner argued that this admission of bias, along with the judges "last day-last minute" reversal of evidentiary rulings in CR 2001-3448, clearly established an undue friendship and favoritism for the State, was extremely prejudicial to Petitioner, and deprived him of his right to due process and the right to a fair trial. Although Petitioner cited the Fifth Amendment to the United States Constitution, he also cited the Supreme Court case *Tumey v. Ohio*, 273 U.S. 510 (1927). (Answer, Ex. M, at 33-34.) In *Tumey*, the Supreme Court held that subjecting a defendant in a criminal case to the judgment of a judge who has a direct, personal, substantial pecuniary interest in reaching a conclusion against him, is a denial of due process of law under the Fourteenth Amendment. *Id*. at 523. This claim raised in his opening brief on direct review to the Arizona Court of Appeals is sufficiently similar, both factually and legally, to the claim Petitioner now presents. Accordingly, the Magistrate Judge finds the sixth claim of Ground Three properly exhausted, and will address the merits of the claim below.

Petitioner asserts in his reply that the first, second, and third incidents were raised in his motion for recusal and change of judge for bias, and that he specifically detailed the grounds supporting these claims by addressing this motion in his direct appeal.

(Reply, at 114-15, 122-23, 131-32.) This is not a fair presentation to the state courts of Petitioner's federal claims. In raising the claim that the trial judge's statement during the bench conference established that the trial judge had formed a predisposition or opinion that Petitioner was guilty of a criminal act, Petitioner stated that: "This was not the first time Defendant had complained of [the trial judge's] bias. In CR-2001-3448, Appellant had filed a motion for change of judge for cause with supporting Affidavit, pursuant to Rule 10.1, Ariz.R.Crim.P., 17 A.R.S., after the second trial ended, on other grounds. On July 25, 2003, [a] hearing was held on appellant's Motion for Recusal and change of judge for cause, and the hearing judge would not allow Appellant to present his arguments, ruling the Motion was not timely filed." (Answer, Ex. M, at 32)(internal references omitted). Petitioner did not argue that the denial of his motion to recuse or for a change of judge violated his constitutional rights. This passing reference was not sufficient to fairly alert the appellate court to any of the claims that might have been raised in the motion for recusal. *See Castillo,* 399 F.3d at 1002-03 (The Arizona habeas petitioner "must have presented his federal, constitutional issue before the Arizona Court of Appeals within the four corners of his appellate briefing.") "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin,* 541 U.S. at 32.

### b)   State process ineffective

Petitioner contends that the Court may consider the fourth, seventh and eighth incidents alleged in Ground Three because the state's appellate process is ineffective to protect his rights.[4] (Reply, at 137, 154-55, 159-62.) Petitioner contends that any review of these claims by the appellate court would have been futile, because the appellate court applied an "actual prejudice" standard of review of his judicial bias claims, instead of a harmless error analysis. Again, to the extent the futility doctrine remains viable (*see supra*, at Section III.B.1.iv), Petitioner has shown neither futility as to this issue, by demonstrating either that "the highest state court has recently addressed the issue raised in the petition and resolved it adversely to the petitioner," *see Sweet,* 640 F.2d at 236, nor that "there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief," *see Duckworth,* 454 U.S. at 3. In fact, Petitioner argued to the appellate court that the standard for review of the trial court's decision in the claim he presented was established by the state case *State v. Perkins*, 141 Ariz. 278 (1984) *overruled on other grounds*, *State v. Noble*, 152 Ariz. 284 (1986). In *Perkins*, the Arizona Supreme Court stated that, "in addition to demonstrating the court's proclivity, the party seeking recusal must show how that proclivity was prejudicial to him." *Id.* at 286. Petitioner cannot now argue that the court erred by applying the very rule of law established in the controlling state case he cited to

---

[4] Petitioner also argues generally that this argument applies to the first seven claims. (Reply, at 162-63) The analysis and recommendation of the Magistrate Judge as to this general allegation is the same as for the specific allegations raised in claims four, seven, and eight.

the court on the issue. Petitioner did not argue then, as he does now, that the issue should have been analyzed under the "actual or apparent bias" test for structural error analysis as established by the Supreme Court in *Liteky v. United States*, 510 U.S. 540, (1994). Accordingly, Petitioner has failed to establish an absence of available State corrective process or that circumstances exist that render such process ineffective to protect his rights.

### c)      Actual Innocence

Petitioner argues that he is permitted to raise the eighth incident alleged in Ground Three pursuant to the doctrine of "actual innocence." (Reply, at 163.) To support a claim of actual innocence a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup,* 513 U.S. at 324. The Court concludes that upon review of Petitioner's allegations, including the allegations asserted in Petitioner's reply, that Petitioner has not offered any new reliable evidence of actual innocence, sufficient to establish that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of the new evidence. *See id.* at 327.

### d)      Fifth Claim Abandoned

In Petitioner's reply, Petitioner abandons his fifth claim of judicial bias presented in Ground Three, acknowledging that the two separate "ultimate issues of fact" in his case were made on Petitioner's motion to dismiss/vindictive prosecution, not double

jeopardy, and thus it "would call for Ramsey to exercise 'over-reaching' to make his argument 'plausible.'" (Reply, at 139.) Accordingly, the Magistrate Judge recommends this as an additional grounds for dismissing the fifth claim of Ground Three.

### 2. Merits

Petitioner argues that he was indicted, tried and convicted in violation of his right to due process. Petitioner argues that the trial judge's bias is established through "repeated acts of judicial vindictiveness, extra-judicial acts, intentional judicial over-reaching, falsification, misrepresentation and mischaracterization of prior established material facts, and practicing law from the bench to facilitate the malicious and vindictive pursuit to prosecute Ramsey for a crime he proved did not occur." (Petition, at 8.) In Petitioner's sixth claim of judicial bias, the only claim properly exhausted, Petitioner alleges the trial judge advised that, after sitting through two separate trials, she believed Ramsey had sexually abused A.R., and that this admission of her belief in Petitioner's guilt is the motivating cause of "her intentional over-reaching and extra judicial acts done to ensure Ramsey 'get's [sic] what he deserves", and, 'part of the reason for her animosity and unprofessional animosity toward's [sic] Ramsey contesting his case so hard, and, why she granted the prosecutor such great favors." (Petition, at 8-10.) The Court of Appeals found that the court's reference to A. as a victim was well grounded and did not necessarily demonstrate bias. (Answer, Ex. A, at 18.) The appellate court further found that because Petitioner failed to meet his burden of showing prejudice, the trial court did not abuse its discretion in denying Petitioner's motion for a change of

judge or his motion for a mistrial based on judicial bias. (Answer, Ex. A, at 18.)

While most questions concerning a judge's qualifications to hear a case are not constitutional ones, *see Tumey,* 273 U.S. at 523 ("matters of kinship, personal bias, state policy, remoteness of interest would seem generally to be matters merely of legislative discretion"); *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 828 (1986); *FTC v. Cement Inst.*, 333 U.S. 683, 702 (1948) (stating that "most matters relating to judicial disqualification [do] not rise to a constitutional level."), "the .. Due Process Clause clearly requires a 'fair trial in a fair tribunal' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S 899, 904–05 (1997)(internal citations omitted); *In re Murchison*, 349 U.S. 133, 136 (1955).

Petitioner fails to demonstrate that the Arizona state courts applied federal law or interpreted the facts before them unreasonably; nor does he show that the state courts' denial of his appeal was contrary to federal law. The determination of judicial bias is a factual question to which the federal courts defer on habeas review. *See* 28 U.S.C. § 2254(d); *Villafuerte v. Stewart*, 111 F.3d 616, 632 (9th Cir.1997) (stating that state court's finding of lack of judicial bias was entitled to a presumption of correctness.) To succeed on a judicial bias claim, a petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). The Supreme Court has stated that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior

proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky,* 510 U.S. at 555. The trial judge's statement during the bench conference does not implicate bias rising to the level of a due process violation. As the appellate court explained, "[t]he trial court's statement that A. was a victim was based not only on testimony to that effect in the prior trial, over which the same judge had presided, but also on Ramsey's conviction in that very case for furnishing obscene or harmful items to A." (Answer, Ex. M, at 18.) As the Supreme Court has explained, "opinions held by judges as a result of what they learned in earlier proceedings" are "not subject to deprecatory characterization as 'bias' or 'prejudice'" *Liteky,* 510 U.S. at 551.

Petitioner fails to present any facts that would support a finding of actual bias or create the inference of unconstitutional bias. The present situation is unlike any in which the Supreme Court has implied unconstitutional bias. *See Lavoie,* 475 U.S. 824 (calling for recusal where state supreme court justice's interest was "direct, personal, substantial, [and] pecuniary"); *In re Murchison,* 349 U.S. at 138 (finding bias where judge acting as one-man grand jury in secret hearings charged two witnesses with contempt and then presided over witnesses' contempt hearings); *Taylor v. Hayes,* 418 U.S. 488, 501-03 (1974) (finding bias where judge was subject to litigant's direct personal insults). Nor does Petitioner put forth any facts to overcome the presumption that the trial judge was impartial. *See Liteky,* 510 U.S. at 556 n. 3 (holding that "when intrajudicial behavior is at issue, manifestations of animosity must be much more than subtle to establish bias"); *id.*

at 562 (Kennedy, J., concurring) (recognizing that the "conscientious judge will, as far as possible, make himself aware of his biases ... and, by that very self-knowledge, nullify their effect"). Petitioner contends, in the claim preserved for review by this Court, that the trial judge's statements made during the bench conference constitute intentional over-reaching and extrajudicial acts. However "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555. Moreover, judicial bias or prejudice formed during current or prior proceedings is insufficient for recusal unless the judge's actions "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 541.

Given Petitioner's failure to put forth facts establishing unconstitutional bias, the Magistrate Judge does not find that the state courts applied federal law or interpreted the facts before them in an unreasonable fashion. Accordingly, the Magistrate Judge recommends dismissal of this claim.

E.    Ground Four

Petitioner contends in Ground Four that Petitioner's Fifth and Fourteenth Amendment rights were violated by an "indictment that [was] duplicitous." (Petition, at 9.) He contends that "the 'special new language' developed and added to the statutory language of A.R.S. § 13-1417 impermissibly broadened the application of A.R.S. § 13-1417 beyond the 'plain language' [of the statute], allowing each juror to 'pick and choose' between multiple statutory clauses without a unanimous agreement on which act violated which statutory clause alleged." (Petition, at 9-9.)

1

2

3   *1.       Exhaustion/Procedural Default*

4       Respondents concede that Petitioner properly exhausted his claim that the

5   indictment charges multiple offenses in the same count by raising this claim in his direct

6   appeal. (Doc. 10, at 10.) Respondents also acknowledge that, to the extent Petitioner's

7   claim that he raised on appeal, that "the word 'or' [in A.R.S. § 13-1417(A)] clearly

8   specifies legislative intent to be one of the three statutes to be used when charging the

9   offense, not a combination of two or all three in one count," is the same claim made in

10  Petitioner's habeas petition, he has properly exhausted that claim also. (Doc. 10, at 10-

11  11)

12

13      *2.       Merits*

14

15      **a.       Fifth Amendment Claim**

16      The first step in analyzing Petitioner's claim under § 2254(d)(1) is "to identify the

17  "clearly established Federal law, as determined by the Supreme Court of the United

18  States" that governs the habeas petitioner's claims." *Marshall v. Rodgers*, 133 S.Ct. 1446

19  (2013)(citing *Williams v. Taylor*, 529 U.S. at 412; *Knowles v. Mirzayance*, 556 U.S. 111,

20  122 (2009)). "'An indictment is duplicitous where a single count joins two or more

21  distinct and separate offenses.'" *Qualls v. Goldsmith*, 2006 WL 1307940 (9th Cir. 2006)

22  (quoting *United States v. Ramirez-Martinez*, 273 F.3d 903, 913 (9th Cir. 2001) *overruled

23  on other grounds by United States v. Lopez*, 484 F.3d 1186, 1191 (9th Cir. 2007)).

24  Duplicitous indictments are prohibited under Arizona law because they fail to provide

25  adequate notice of the charges, because they present the hazard of a non-unanimous jury

26

27

28

verdict and because they make a precise pleading of prior jeopardy impossible in the event of a later prosecution. *See Spencer v. Coconino County Superior Court*, 136 Ariz. 608, 610 (1983)(citing *Wong Tai v. United States*, 273 U.S. 77 (1927); *State v. O'Brien*, 123 Ariz. 578 (App.1979)); *see also Ramirez–Martinez*, 273 F.3d at 915 (concern with duplicitous indictments is that a jury will convict without agreeing unanimously on the act underlying the count), *overruled on other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir.2007). The Court will address each of these concerns in turn. First, it is the Fourteenth Amendment, not the Fifth Amendment that protects a person against deprivations of due process by a state. *See* U.S. Const. amend XIV, § 1 ("nor shall any state deprive any person of life, liberty, or property without due process of law."); *Castillo*, 399 F. 3d at 1002 n. 5 ("The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States."). Because the Fifth Amendment Due Process Clause does not provide a cognizable ground for relief regarding Petitioner's state court conviction, his allegations under the Fifth Amendment Due Process Clause should be dismissed.

### b.    Jury Unanimity

Because one concern of a duplicitous indictment is that a jury will convict without agreeing unanimously on the act underlying the count, *Ramirez-Martinez*, 273 F.3d at 913, Petitioner must establish that he is entitled to relief on a jury unanimity claim before he can prevail in this federal habeas claim. Petitioner cannot show that the Arizona Court

of Appeals decision was contrary to or based on an unreasonable application of "clearly established Federal law," as determined by the Supreme Court. 28 U.S.C. § 2254(d)(1); *see, e.g., Carey v. Musladin*, 549 U.S. 70, 77 (2006) (finding that no decision of the Court clearly established "the potentially prejudicial effect of spectators' courtroom conduct"); *see also Mirzayance*, 129 S.Ct. at 1413–14 ("[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court.") (internal quotation marks omitted). Petitioner cites no Supreme Court authority indicating that duplicitous indictments *per se*, or lack of a unanimous jury renders an indictment unconstitutional.

In Petitioner's opening brief to the state appellate court, Petitioner argued that "[s]ince A.R.S. § 13-1417 specifically mandates the determination of violating other statutory offenses are requisite elements of continuous sexual abuse of a child, the State must comply with the mandate of Rule 13.3, Ariz.R.Crim.P. and *Spencer [v. Coconino County Superior Court*, 136 Ariz. 608, 667 P.2d 1323 (1983)] by charging the three or more predicate offenses separately, and each must be proven as a mandatory element before [Petitioner] could be found guilty of a continuing course of conduct. Therefore [Petitioner's] indictment is duplicitous in this respect." (Doc. 11, at 12.) Although the Arizona Court of Appeals looked to Supreme Court precedent for guidance in determining whether § 13-1417 violated the Arizona Constitution, the Arizona appellate court specifically acknowledged that the jury-unanimity requirement imposed by the federal Constitution did not extend to the states. (Answer, Ex. M, at 12.) The Supreme

Court "has never held jury unanimity to be a requisite of due process of law." *Johnson v. Louisiana*, 406 U.S. 356, 359 (1972); *see also Sanders v. Lamarque*, 357 F.3d 943 (9th Cir. 2004); *Apodaca v. Oregon*, 406 U.S. 404 (1972)(unanimity requirement is "not of constitutional stature"); *see also McDonald v. City of Chicago*, 130 S.Ct. 3020, 3035 n. 14 (2010)(recognizing that the Court has held that although the Sixth Amendment right to trial by jury requires a unanimous jury verdict in federal criminal trials, it does not require a unanimous jury verdict in state criminal trials).

Accordingly, because there is no clearly established law requiring that a jury verdict be unanimous in state criminal trials, *Johnson*, 406 U.S. at 359, Petitioner cannot show that the state court's decision was contrary to or based on an unreasonable application of "clearly established Federal law.," as determined by the Supreme Court. 28 U.S. C. §2254(d)(1). *See Williams*, 529 U.S. at 365; *Musladin*, 549 U.S. at 76-77 (denying habeas relief in absence of clearly established federal law).

F.   <u>Ground Five</u>

Petitioner contends in Ground Five that he received ineffective assistance of counsel (IAC) at trial. (Petition, at 10.) Specifically, he contends that his counsel failed to oppose the State's motion to suppress "all facts pertaining to the two previous jury trials," "allowed [the State] to present materially false facts as 'other bad acts' knowing the prosecutor had stipulated they did not occur," and that she "permitted the prosecutor to suborn perjury to charge prior established material facts, and refused to argue the facts developed in CR 2001–3448 created a history of false allegations." (Petition, at 10-3.)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*1.     Exhaustion/Procedural Default*

Respondents concede that Petitioner presented a claim of ineffective assistance of counsel in the state trial and appellate courts, which claim arguably raised the same issues as those he raises in his habeas petition. (Doc. 10, at 11, citing Ex. G, K.) Therefore, he appears to have properly exhausted this claim. Accordingly, the Court will address the merits of the claim below.

2.     Merits

To prevail on a claim of ineffective assistance of counsel, Petitioner must satisfy two separate requirements: he must (1) show that counsel's performance fell below objective standards of reasonableness and "outside the wide range of professionally competent assistance," and (2) establish that counsel's performance prejudiced Petitioner by creating "a reasonable probability that absent the errors the fact finder would have had a reasonable doubt respecting guilt." *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984); *see also Williams,* 529 U.S. at 390; *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). *Strickland* is the clearly established law for ineffective assistance of counsel claims. *See Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 780 (2011).

Petitioner contends that trial counsel allowed material false facts to be presented as "other bad acts" knowing that the prosecutor had stipulated they did not occur, and permitted the prosecutor to suborn perjury to change prior established material facts, and additionally refused to argue that the facts developed in the prior proceedings, CR-20013448 created a history of false allegations. (Petition, at 10-3) As the appellate court

- 42 -

noted, Petitioner's contentions can only be understood in light of prior proceedings involving cause number CR-20013448:

> In that case, Ramsey had been indicted on multiple counts of sexual abuse against the same victim; the majority of those charges had been dismissed with prejudice, another had resulted in Ramsey's acquittal, but he was convicted of two counts of furnishing obscene or harmful items to a minor, convictions [the appellate court] affirmed on appeal. . . .
>
> The trial court explained in its minute entry ruling denying post-conviction relief in this case that the charged conduct had been a "key difference between this trial and the others" that had been based on the previous indictment. The court stated: "In the other trials, the counts subject to dismissal or acquittal [had] alleged that individual acts of abuse [had] occurred in a specific week, month, or year; in this trial, the sole count was continuous sexual abuse of a minor." Addressing counts five through sixty-four of the previous indictment, the court further explained:
>
> > The victim [had] told police that she [had been] molested every week. During cross-examination in the first trial, [however,] she [had] said it was "possible" that [the abuse] did not occur every week. The prosecutor stated that he realized the jury could not determine in which week an act of abuse "possibly" did not occur, and dismissed all of those counts.
>
> And, the court noted that "the dates of these counts all were outside the time period for which continuous sexual abuse was alleged in this trial."

(Answer, Ex. J, at 2)(internal citation omitted).

At the hearing on the State's motion to admit evidence of other acts to show Petitioner's aberrant sexual propensity, Petitioner's counsel stated:

> For tactical reasons, we don't have an objection to admissions that [A.R.'s] allegations were this was going on for a long time, and everyone knows why that is, and that is the fact that she's alleging this has gone on for four years, where [her mother] is sleeping in the same bed, and the longer period of time that she's portraying that to be, the more outrageous it appears or could appear to the jury, that she in fact is making that up so that's why we

- 43 -

don't, for tactical reasons have an objection to her saying once a week for four years this molest happened.

(Answer, Ex. V, at 23–24.)

Petitioner argued in his petition for post-conviction relief in the trial court that trial counsel should have argued prior false allegations are admissible, but did not. (Answer, Ex. G, at 32.) Had trial counsel cross-examined A.R. about her prior false allegations, "the jury would not have given [A.R.'s] story any credibility to convict Petitioner." (*Id.*)

The trial court found, first, that the evidence was properly admitted, pursuant to Arizona Rule of Evidence 404(c), as propensity evidence. Because counsel failed to object, and the issue was not raised on appeal, the issue was precluded from appellate review as trial error, however. With respect to trial counsel's decision not to object to the victim's statements, the trial court found that she made a tactical decision to allow the admission of this evidence so that she could argue that the victim made up "outrageous claims." The trial court found that trial counsel was entitled to wide latitude with respect to strategy, and counsel's strategy did not fall below objectively reasonable standards for representation. (Answer, Ex. D, at 5.)

In his petition for review to the appellate court, the Court of Appeals noted this concession, stating, "[Petitioner] concedes his trial counsel had not objected to such evidence as a matter of trial strategy." (Answer, Ex. J, at 3.) The appellate court adopted the trial court's ruling. (*Id.*)

Petitioner bears the burden of proving that trial counsel's strategy was deficient. "[T]he defendant must overcome the presumption that, under the circumstances, the

challenged action 'might be considered sound trial strategy.' " *Strickland*, 466 U.S. at 689. "[He] bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy." *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir.2001). "In determining whether the defendant received effective assistance of counsel, 'we will neither second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight,' but rather, will defer to counsel's sound trial strategy." *Id.* (quoting *Strickland*, 466 U.S. at 689). "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment." *Strickland*, 466 U.S. at 681. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The court must then consider those acts or omissions against "prevailing professional norms." *Id.* Even then, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Petitioner has not met this "heavy burden." He has shown no evidence indicating that trial counsel was unreasonable or ineffective for selecting his chosen trial strategy. The Court finds that the state court's application of federal law was proper, and that trial counsel employed a reasonable trial strategy.

Petitioner's counsel was also not ineffective for failing to oppose the State's motion to preclude any mention of the prior trials and their verdicts. The State made this

motion on November 10, 2003. (Answer, Ex. S.) At the time, Petitioner was representing himself. (Answer, Ex. T.) At a hearing on November 12, 2003, Petitioner indicated that he would file a response to the State's motion no later than November 19, 2003. (Answer, Ex. U.) No response was filed. Thus, Petitioner himself failed to respond to the motion. *See State v. Russell*, 175 Ariz. 529, 534 (App. 1993) ("[A]fter waiving his right to counsel at trial, the defendant has no constitutionally protected right to challenge the advice or services provided by advisory counsel.") (citing *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987)). Nevertheless, Petitioner apparently protests that, after he was again represented by counsel, his attorney failed to oppose the State's motion. On January 5, 2004, Petitioner sought to be represented by his advisory counsel at trial, and his advisory counsel was appointed to represent him. (Answer, Ex. V, at 2–4; Ex. W.) At the same hearing, the parties addressed the State's motion to preclude mention of prior trials and verdicts. (Answer, Ex. V, at 53–55.) Petitioner's counsel did not specifically oppose the motion. (*Id.*) At trial, however, she impeached A.R.'s testimony with inconsistent testimony from prior trials. (*See* Answer, Ex. X.) While Petitioner was not permitted to elicit that the prior testimony was from trials, his attorney clearly referenced A.R.'s earlier statements as "testimony." (*Id.*) Further, evidence of the dismissal and acquittal of other charges against Petitioner was not relevant to whether A.R.'s allegations were false. At most, those dispositions demonstrated that the State could not prove beyond a reasonable doubt that the offenses had occurred. Therefore, evidence of the dismissals and acquittals would not have impeached A.R.'s testimony that she had

been molested or shown that she had fabricated any charges of abuse. Further, any minimal probative value of these matters would have been "substantially outweighed by the danger of . . . confusion of the issues, or misleading the jury." Ariz. R. Evid. 403. As the trial court held in addressing Petitioner's IAC claim, "[b]ecause Petitioner was able to impeach his daughter with her own statements, the fact of a prior dismissal or acquittal was cumulative and would have mischaracterized prior proceedings." (Answer, Ex. D, at 5.) Thus, the evidence was inadmissible and trial counsel was not ineffective in failing to object to its preclusion. Petitioner has failed to demonstrate that his trial counsel's performance fell below objective standards of reasonableness and "outside the wide range of professionally competent assistance," or that counsel's performance prejudiced him by creating "a reasonable probability that absent the errors the fact finder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 687–94. He certainly has not demonstrated that the state courts unreasonably applied *Strickland* in resolving this claim. Because "fair-minded jurists could disagree on the correctness of the state court's decision," federal habeas relief may not be granted. *Richter*, 131 S. Ct. at 786 (internal quotation marks omitted).

Accordingly, the state courts' rulings denying relief on Petitioner's IAC claim is neither contrary to, nor involves an unreasonable application of, clearly established federal constitutional law as announced by the United States Supreme Court. 28 U.S.C. § 2254(d). Accordingly, federal habeas relief is not appropriate. *Id.*

The Magistrate Judge recommends that the District Court, after its independent

review, deny this claim on the merits.

## IV.     Recommendation

The Magistrate Judge recommends that the District Court DISMISS Petitioner's Petitions for Writ of Habeas Corpus.

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Fed.R.Civ.P. 72(b). No reply to any response shall be filed. *See id.* If objections are filed the parties should use the following case number: CIV 11-0101-TUC-FRZ.

If objections are not timely filed, then the parties' right to de novo review by the District Court may be deemed waived.

Dated this 18th day of April, 2013.


Héctor C. Estrada
United States Magistrate Judge